IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALEXANDER JIGGETTS,

   Plaintiff,

   v.                                           Civil Action No.: ELH-21-190

STATE OF MARYLAND,

   Defendant.

**MEMORANDUM**

On January 22, 2021, the Court received a civil suit for damages filed by Alexander Jiggetts, alleging a violation of the Fourth Amendment. ECF 1; ECF 1-1. He seeks an order vacating his arrest and conviction. ECF 1-1. The suit is one of several that Jiggetts filed in mid January of 2021, without payment of the filing fee or a motion to proceed in forma pauperis. *See* 28 U.S.C. § 1915.

In the first part of his Complaint, Jiggetts asserts that his Complaint is lodged against the Baltimore County State's Attorney's Office for failing to secure his consent for DNA testing. ECF 1-1 at 1. He states that he was asked to submit to DNA testing at a time when consent was required if no warrant had been issued by the State court. *Id*. Jiggetts alleges: "I did not allow them to get a DNA sample" and "the legislature did not change till October 2005" but he "was arrested August 19, 2005." *Id*. at 1-2.

According to Jiggetts, the charge for which he was arrested was a misdemeanor that only carried a penalty of one year, but when he pleaded guilty he was given a 20 year sentence. *Id*. at 2. He claims he worked for the United States Postal Service at the time and, on that basis, asked for sovereign immunity. *Id*.

Jiggetts filed a petition for writ of actual innocence in the Circuit Court for Baltimore County in March 2020.  *Id.*  Judge Robert Cahill denied relief and also stated that Jiggetts "should be put away for ever [sic]" because of "all he has done."  *Id*. at 2.  Plaintiff seeks "any conditions that can make [him] whole" and "sovereign immunity" because he is "a Federal volunteer . . . and work for USPS."  *Id*. at 3.  Jiggetts adds that "Mr. Elijah Cummings put [him] on the Federal Payroll for life."  *Id*.

In "Part II" of the Complaint, Jiggetts asserts a claim against the Circuit Court for Baltimore City and the State's Attorney's Office because he filed a petition for writ of actual innocence in case 816180013, which was allegedly hidden from Case Search, and, when he called the Clerk's Office, he was told he did not need to know the status of his case.  ECF 1-1 at 5.  Plaintiff claims that he was also prohibited from calling the court, and he believes the court was attempting to make him "enemies with my favorite court United States District Court."  *Id*.  According to Jiggetts, he proved his innocence and proved "they violated the exclusionary rule and the DOJ rules and FBI rules for using that unlawful device we don't want in our city."  *Id*.[1]  Further, plaintiff seems to complain about the closure of the court due to COVID-19 and about spying by use of an airplane.  *Id.* at 7-8.

In "Part III" of the Complaint, Jiggetts complains about Judge Stephanie Gallagher, a member of this court's bench, in "Case 3399," *id.* at 9, stating that his litigation is too complex for her to handle.  *Id.* at 8.  Although plaintiff references case 3399, he does not provide any other information to identify which of his many cases he is referencing.  In any event, Jiggetts appears to believe he won a judgment in a case filed in this court because "someone copied the exact same

---

[1] Jiggetts may be referencing a crime surveillance plane.  Recent news reports suggest that it is no longer in use in Baltimore City, due to a lack of funding.

suit in Pennsylvania and [won] 8 billion [dollars]." *Id*. at 10.  He also seems to believe that his case should have gone to the Fourth Circuit and the United States Supreme Court for appellate review, but also complains that he did not have the forms or address to file an appeal.  *Id*. at 9.

Like the other complaints Jiggetts filed in this court on the same date, this Complaint also does not state a cognizable claim.  Jiggetts' assertion regarding a DNA test that took place more than 15 years ago is time-barred.  "Section 1983 provides a federal cause of action, but in several respects relevant here, federal law looks to the law of the State in which the cause of action arose.  This is so for the length of the statute of limitations: it is that which the State provides for personal-injury torts."  *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)).  In Maryland, the applicable statute of limitations is three years from the date of the occurrence.  *See* Md. Code, Cts & Jud. Proc. Art., § 5-101.  Further, Jiggetts does not name any individuals as defendants; rather, he names only the State of Maryland.

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  *Id*. (citing *Florida Department of Health v. Florida Nursing Home Assn.,* 450 U.S. 147 (1981)) (per curiam).  Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code, State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit of this kind in federal court.  "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued."  *Halderman*, 465 U.S. at 100 (emphasis in original).  Thus, the sole defendant named is entitled to sovereign immunity.

To the extent that Jiggetts' second and third claims concern decisions made by judges, they fall squarely within the type of claims prohibited by judicial immunity.  The crux of his claim is a disagreement with decisions made by members of the judiciary.  "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits.  The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability."  *Forrester v. White*, 484 U.S. 219, 226-27 (1988).

The doctrine of judicial immunity shields judges from monetary claims against them in both their official and individual capacities. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam). Judicial immunity is an absolute immunity; it does not merely protect a defendant from assessment of damages, but also protects a judge from damage suits entirely.  *Id*. at 11.  An act is still judicial, and immunity applies, even if the judge commits "'grave procedural errors.'"  *Id*. (quoting *Stump v. Sparkman,* 435 U.S. 349, 359 (1978)).  Moreover, "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump,* 435 U.S. at 355-56; *see Dean v. Shirer*, 547 F.2d 227, 231 (4th Cir. 1976) (stating that a judge may not be attacked for exercising judicial authority even if done improperly); *Green v. North Carolina*, No. 4:08-CV-135-H, 2010 WL 3743767, at *3 (E.D.N.C. Sept. 21, 2010).

Plaintiff has failed to state a cognizable claim. Therefore, under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2), the Complaint must be dismissed by separate Order, which follows.

January 28, 2021 /s/
Date Ellen L. Hollander
United States District Judge